UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PRACTICAL HEALTHCARE                    CIVIL ACTION NO. 6:15-cv-00235
SUPPLY, INC.

VERSUS                                  JUDGE DOHERTY

ASSUREDPARTNERS GULF COAST              MAGISTRATE JUDGE HANNA
INSURANCE AGENCY, LLC d/b/a
LANDRY HARRIS & CO., FRANKIE
S. HARRIS, III, and LIBERTY MUTUAL
INSURANCE CO.

## MEMORANDUM  RULING

Pending before the Court is the plaintiff's motion to remand (Rec. Doc. 8).  The

motion is opposed.  Oral argument was heard on April 28, 2015.  Following the

hearing, the undersigned ordered the removing defendants to amend their removal

notice with summary-judgment-style evidence proving the citizenship of the parties

to this lawsuit and ordered all of the parties to supplement their arguments regarding

the alleged improper joinder of defendants AssuredPartners Gulf Coast Insurance

Agency, LLC and Frankie S. Harris, III.  (Rec. Doc. 24).  The parties complied with

the order (Rec. Docs. 25, 26, 28, 29), and the undersigned has reviewed the additional

submissions.  Considering the evidence, the law, and the arguments of the parties, and

for the reasons fully explained below, the motion to remand is DENIED.

## FACTUAL BACKGROUND

The factual background set forth in the order of May 15, 2015 (Rec. Doc. 24) is incorporated herein by reference.

## ANALYSIS

Defendants Liberty Mutual Insurance Company and Peerless Insurance Indemnity Company contend that this Court has subject-matter jurisdiction over this action under 28 U.S.C. §1332 because the amount in controversy exceeds the jurisdictional minimum and the parties are diverse in citizenship when the citizenship of the allegedly improperly joined defendants is ignored.

The undersigned previously found that it is facially apparent from the plaintiff's First Amended, Supplemental and Restated Petition for Damages and Declaratory Judgment (hereinafter "the restated petition") that the amount in controversy exceeds the $75,000 statutory threshold for jurisdiction under 28 U.S.C. § 1332.   (Rec. Doc. 24).   The analysis used in reaching that conclusion is incorporated herein by reference.

However, in the prior order (Rec. Doc. 24), the undersigned explained that the removing defendants had failed to prove the citizenship of each of the parties, precluding the undersigned from determining whether the plaintiff was diverse in citizenship from all of the defendants.  The removing defendants were ordered to

amend their removal notice to provide additional information to be used in evaluating

the parties' citizenship (Rec. Doc. 24), and the removing defendants complied with

that order (Rec. Doc. 28).   Based on the additional information provided, the

undersigned now finds that the plaintiff is a citizen of Louisiana, defendant

AssuredPartners is a citizen of Delaware and Florida, defendant Mr. Harris is a citizen

of Louisiana, defendant Liberty Mutual is a citizen of Massachusetts, and defendant

Peerless is a citizen of Illinois and Massachusetts.   Because the plaintiff and Mr.

Harris are both citizens of Louisiana, the parties are not completely diverse.

The removing defendants argue, however, that Mr. Harris's citizenship should

be disregarded because he was improperly joined as a defendant in this lawsuit.[1]  To

establish the improper joinder of a non-diverse defendant, the removing defendants

must demonstrate either:  (1) actual fraud in the pleading of jurisdictional facts, or (2)

the inability of the plaintiff to establish a cause of action against the non-diverse party

---

[1]        The removing defendants contend that both AssuredPartners and Mr. Harris were improperly joined.  The improper joinder doctrine permits a court to ignore the citizenship of a nondiverse party when evaluating whether the parties are diverse in citizenship.  "The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity." *McDonal v. Abbot Laboratories*, 408 F.3d 177, 183 (5th Cir. 2006).  Therefore, the improper joinder doctrine is not applicable to a diverse defendant.  Since AssuredPartners is diverse from the plaintiff, the improper joinder analysis does not apply to it.  Only Mr. Harris's citizenship can destroy diversity; therefore, he is the only defendant that might be improperly joined.

in state court.[2]  The removing defendants have not alleged any actual fraud in this case; instead, they contend that the plaintiff has no possibility of recovering against Mr. Harris.

A defendant who contends that a non-diverse party is improperly joined has a heavy burden of proof.[3]  The court must ordinarily evaluate all of the factual allegations in the plaintiff's state-court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.[4] If the court then finds that there is no possibility of recovery against the non-diverse party, the non-diverse party has been improperly joined, and its citizenship must be disregarded for jurisdictional purposes.  The test to be applied in evaluating improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[5]

---

[2]     *Gasch v. Hartford Accident & Indemnity Co.*, 491 F.3d 278, 281 (5th Cir. 2007); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006); *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003).

[3]     *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983).

[4]     *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005); *Green v. Amerada Hess*, 707 F.2d at 205.

[5]     *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 577 (5th Cir. 2004).

Employing that test, the court first looks to the allegations of the complaint to determine whether it states a claim against the in-state defendant,[6] reading them leniently in favor of remand, under a standard similar to that used in evaluating a Rule 12(b)(6) motion to dismiss.[7]  If the defendant argues that the plaintiff has misstated or omitted discrete facts that would preclude recovery against the in-state defendant, however, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry.[8]  In such cases, the court may consider summary judgment-type evidence.[9] The burden of proof remains with the removing parties to show that there is no possibility of recovery against the nondiverse defendant.[10]

Here, the removing defendants argue that any claim against Mr. Harris has perempted.  It is undisputed that the timeliness of the plaintiff's claim against Mr. Harris is governed by La. R.S. 9:5606(A), which reads as follows:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be

---

[6]      *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d at 573.

[7]      *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).

[8]      *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d at 573.

[9]      *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007); *Travis v. Irby*, 326 F.3d at 649.

[10]      *Gasch v. Hartford*, 491 F.3d at 281.

brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Subsection D of the same statute makes it clear that both the one-year time period and the three-year time period established in the statute are peremptive periods that cannot be renounced, interrupted, or suspended.  Therefore, to be timely, the plaintiff's claim must have been brought not more than one year after the date or discovery of a negligent act or omission but in no case more than three years after the date on which the negligent act or omission occurred.

The restated petition alleges that the plaintiff used defendant AssuredPartners as its insurance agent and that Mr. Harris was employed by AssuredPartners as an insurance and risk advisor.  The plaintiff alleges that Mr. Harris and AssuredPartners were responsible for procuring a business owners insurance policy through defendant Liberty Mutual, which was underwritten by defendant Peerless.  The restated petition alleges that "[t]he most recent date of renewal was November 15, 2013. . . ."  (Rec. Doc. 1-1 at 13).  It also alleges that "when it first sought to obtain property and

liability insurance, and at all pertinent times thereafter, Practical [Supply][11] made it

clear to Mr. Harris that it should be listed as a named insured under the Policy and

afforded full property and liability coverage." (Rec. Doc. 1-1 at 12). The plaintiff

further alleges that "Mr. Harris's negligence. . . was repeated on a yearly basis, as the

policy was renewed." (Rec. Doc. 1-1 at 13). However, the petition does not allege

when the first Peerless policy was issued, nor does it allege the dates on which Mr.

Harris was allegedly instructed by the plaintiff as to the type of insurance desired.

Consequently, the restated petition does not allege the dates on which the alleged

negligence occurred. The dates of occurrence of the alleged negligence are critically

important in evaluating whether a claim against an insurance agent has perempted.

Because those critical facts were omitted from the restated petition, it is appropriate

to look beyond the four corners of the plaintiff's allegations in deciding the pending

remand motion.

Liberty Mutual's denial of coverage letter (Rec. Doc. 1-1 at 5-8) was attached

as an exhibit to the restated petition. It is dated September 18, 2014, and explains that

Peerless issued a business owner's policy, Policy No. BOP 8560502, effective from

November 15, 2013 to November 15, 2014, to Lafayette Bone & Joint Clinic. It also

---

[11]    The plaintiff is referred to herein as "Practical Supply" to distinguish it from Practical Health Care LLC.

states that Practical Supply is not an insured under the policy.  It was addressed to

both Lafayette Bone & Joint Clinic and Pracitial [sic] Healthcare Supply, Inc. at the

same address.

A supplemental denial letter (Rec. Doc. 1-1 at 19-23) was also attached to the

plaintiff's restated petition.  It is dated November 20, 2014, and was issued by Liberty

Mutual.  This letter noted that Practical Supply is not shown as an insured under the

policy while Practical Health Care LLC is shown in the policy as having coverage but

only with respect to liability as a co-owner of a premises with a Lafayette, Louisiana

address.  Practical Healthcare Supply, Inc. and Practical Health Care LLC are clearly

two different entities.  According to the letters from Liberty Mutual, Practical Supply

is not covered by the policy at all and Practical Health Care is afforded limited

coverage.  The second letter states:  "'Practical Healthcare Supply, Inc.,' the named

defendant in this [the underlying] lawsuit, is not identified anywhere on the Policy.

Instead, a similarly named entity 'Practical Health Care LLC' appears listed only on

the Policy's Declarations Extension."  (Rec. Doc. 1-1 at 20).

The affidavit of Donna Hacholski, a Senior Commercial Lines Underwriter

with Liberty Mutual, states that the policy was originally issued effective November

1, 2008, then cancelled and rewritten with a new effective date of November 15, 2008

and covering the time period from November 15, 2008 through November 15, 2009.

(Rec. Doc. 1-2 at 8).  She further states that, thereafter, the policy was renewed annually, most recently covering the time period from November 15, 2013 to November 15, 2014.  (Rec. Doc. 1-2 at 9).

The plaintiff argues that its claim is timely because this lawsuit was filed not more than one year after the discovery of Mr. Harris's alleged negligence.  The restated petition alleges that "[i]t was only on September 18, 2014 – after Mr. Nguyen filed suit against Practical [Supply] – that Practical [Supply] discovered that it was not afforded the full coverage it instructed Mr. Harris to procure."  (Rec. Doc. 1-1 at 12).  But the Louisiana Supreme Court has held that an injured party's constructive knowledge – not just his actual knowledge – can start a prescriptive or peremptive period running.

> A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same.  Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry.  Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead.  Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.[12]

---

[12]     *Campbell v. Stone Ins., Inc.*, 509 F.3d at 671, quoting *Campo v. Correa*, 2001-C-2707 (La. 06/21/02), 828 So.2d 502, 510-11.

Practical Supply does not argue that it did not receive a copy of the policy.

Instead, it argues that "it could not decipher from the policy that it was not afforded

full coverage."  (Rec. Doc. 16 at 4).  Two logical inferences can be made from this

assertion:  first, the plaintiff was provided with a copy of the policy; and second, it

had notice "to excite attention and put the injured party on guard and call for inquiry."

The inescapable conclusion is that the plaintiff had constructive knowledge of the

contents of the policy.

Despite this, however, the plaintiff argues that whether a party has constructive

knowledge of a policy's terms is an issue of fact[13] and argues that, at this stage,

unchallenged issues of fact must be decided in favor of remand.[14]  But, in this case,

there is no unresolved issue as to the plaintiff's constructive knowledge.  Even if the

plaintiff had not admitted that it attempted to decipher the allegedly obtuse provisions

of the policy, Louisiana law imposes a duty on an insured to read the insurance

policies issued to it and to know the provisions of those policies.  In fact, "[i]t is well

settled that it is the insured's obligation to read the policy when received, since the

---

[13]       In support of this proposition, the plaintiff cites *Argonaut Great Cent. Ins. Co. v. Hammett*, 44,308 (La. App. 2 Cir. 06/03/09), 13 So. 3d 1209, 1213, *writ denied*, 2009-1491 (La. 10/2/09), 18 So. 3d 122.

[14]       The plaintiff cites *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 463 (5th Cir. 2003), in support of this argument.

insured is deemed to know the policy contents."[15]  Accordingly, the plaintiff in this lawsuit is charged with constructive knowledge of the contents of the policies it claims provided coverage to it, starting in 2008 when the policy was originally issued, and the plaintiff is deemed to have known, from that point forward, that the policy does not provide it with coverage.

Therefore, the peremptive period did not begin to run on September 18, 2014 when the plaintiff claimed to have first discovered that the policy affords no coverage, and the plaintiff is not entitled to rely on the part of the applicable statute that provides a one-year peremptive period from the date of discovery of a negligent act or omission.

The plaintiff argues that Mr. Harris was negligent at the time that the policy was originally issued because the policy does not include Practical Supply as a named insured and that he was again negligent every time the policy was renewed because the policy renewals fail to provide Practical Supply with coverage.  Thus, Practical Supply argues that every renewal of the insurance policy started a new peremptive

---

[15]     *Seruntine v. State Farm Fire & Cas. Co*., 2010-1108 (La. 09/03/10), 42 So. 3d 968, 968, citing *Isidore Newman School v. J. Everett Eaves, Inc*., 09–2161 (La. 07/06/10), 42 So.3d 352, 359.  See, also, *Motors Ins. Co. v. Bud's Boat Rental, Inc*., 917 F.2d 199, 205 (5th Cir. 1990) (noting that insureds are responsible for reading the clear provisions of an insurance policy).

period. Such an interpretation of Louisiana law is not supported by the relevant jurisprudence.

> Generally, subsequent renewals of insurance policies do not operate to restart peremption. However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages. The inquiry is whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement.[16]

Thus, for example, a renewal may constitute a separate act if an insured requests specific coverage at the time of renewal that is not included in the renewed policy.[17]

In support of its contrary argument, the plaintiff relies primarily upon *Southern Athletic Club, LLC v. Hanover Ins. Co.*, No. 06-2605, 2006 WL 2583406 (E.D. La. Sept. 6, 2006). But, *Southern Athletic* presented a situation where "each renewal was a separate and distinct act since the parties discussed increases in property value and adjusted the policy limits accordingly."[18] Absent such discussions at renewal time, there is no new peremptive period.

---

[16] *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 47,337 (La. App. 2 Cir. 09/19/12), 104 So. 3d 524, 530 *writ denied*, 2012-2283 (La. 11/30/12), 103 So. 3d 375 (internal citations omitted). See, also, *Arceneaux v. Schaumberg*, No. 07-8741, 2008 WL 2355849 (E.D. La. June 6, 2008), which explained that "[r]enewals of an insurance policy do not normally restart the peremptive period."

[17] *Sonnier v. Louisiana Farm Bureau Mut. Ins. Co.*, 2005-1006 (La. App. 3 Cir. 03/01/06), 924 So. 2d 419, *writ denied*, 2006-0704 (La. 5/26/06), 930 So. 2d 33.

[18] *Arceneaux v. Schaumberg*, 2008 WL 2355849, at *2.

The second case primarily relied upon by the plaintiff is *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*  There, the insurance policy was originally issued in 2004 and renewed every year thereafter.  In 2008, the property flooded during Hurricane Gustav, and it was discovered that the flood coverage afforded by the policy pertained to only one of the three buildings on the property.  Although the property had been automatically renewed every year – meaning that no new application for coverage was required – the agent had contacted the insured every year, prior to each renewal, and they had discussed possible changes to coverage.[19]  The court found that each time the insured sought flood insurance coverage "to the maximum extent" and the agent failed to obtain such coverage was a separate and distinct act because "[e]ach year, prior to the policy renewal date, from 2004 until at least 2007, [the insured] and [the agent] discussed his coverage."[20]

Another case illustrating these concepts is *Arceneaux v. Schaumberg*.  There, the insurance policy at issue was a homeowner's policy that was originally issued in 2002 and renewed annually thereafter.  The plaintiff's home was damaged by Hurricane Katrina in 2005, and the plaintiff claimed that his agent had falsely represented that the policy covered hurricane damage even though it excluded

---

[19]     *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 104 So. 3d at 527.

[20]     *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 104 So. 3d at 531.

coverage for flood damage.  The plaintiff argued that his suit was timely because a

new peremptive period began every time the insurance policy was renewed.  The

court explained that "[r]enewals of an insurance policy do not normally restart the

peremptive period."[21]  Notably,"the policy was renewed every year by mail and did

not involve negotiations or substantive changes; in other words, the renewal was not

a 'separate and distinct act.'"[22]  The *Arceneaux* court also found that the insured was

presumed to have read and had knowledge of the contents of the policy from the time

it was issued in 2002, finding that "the peremptive period began to run in April of

2002, when plaintiff discovered, or should have discovered, that the alleged

misrepresentation by the insurance agent contradicted the terms of the policy."[23]  The

court then denied the plaintiff's motion to remand because there was no reasonable

basis for the court to predict that the plaintiff might be able to recover against the in-

state insurance agent.

Thus, *Southern Athletic Club* and *Sitaram* present factual scenarios very

different from that presented in *Arceneaux* and in this case.  Here, the plaintiff's claim

against Mr. Harris is premised upon the allegation that Mr. Harris failed to follow its

---

[21]     *Arceneaux v. Schaumberg*, 2008 WL 2355849, at *2.

[22]     *Arceneaux v. Schaumberg*, 2008 WL 2355849, at *3.

[23]     *Arceneaux v. Schaumberg*, 2008 WL 2355849, at *2.

instructions and failed to obtain the type of liability insurance coverage that the plaintiff requested.  Since the discovery rule does not apply, one-year and three-year peremptive periods apply but those time periods begin to run from the date on which Mr. Harris's negligent act or omission occurred.  The insurance policy was issued in 2008 without any coverage for the plaintiff; therefore, any negligence on Mr. Harris's part occurred before the policy was issued and the claim perempted three years later, well before this lawsuit was filed.

In similar cases, state and federal courts in Louisiana have noted that the relevant inquiry "is whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement."[24] A policy renewal will restart the peremptive period only if the insured and his agent renegotiate the terms and provisions of the policy or discuss substantive changes to the policy at the time of the renewal and those changes are not accurately reflected in the renewed policy.  Absent any such communications, discussions, or negotiations at renewal time that evidence a negligent act or omission when compared to the policy's contents, the peremptive period will run from the date on which the policy was originally issued.

---

[24]     *Sitaram, Inc. v. Bryan Ins. Agency, Inc*., 104 So. 3d at 530, citing *Branton v. Maddox*, 42,853 (La. App. 2 Cir. 01/9/08), 974 So.2d 190, 193, and *White v. Allstate Ins. Co*., 513 F.Supp.2d 674, 681 (E.D. La. 2007).

The plaintiff in this case has not established that there were discussions with Mr. Harris at any date after the issuance of the insurance policy in 2008 that are sufficient to demonstrate that any one or more of the policy renewals started a new prescriptive period running.  As noted by Liberty Mutual and Peerless in their briefing, the plaintiff "failed to allege *any* meeting, conversation, or communication between it and Harris regarding its alleged coverage needs prior to each renewal of the Policy, much less a date of any such communication."  (Rec. Doc. 15 at 4 (emphasis in original)).  Even when the plaintiff's claim is viewed as generously as possible, the plaintiff's argument fails.  AssuredPartners and Mr. Harris submitted Mr. Harris's affidavit, which states:  "[AssuredPartners's] account file reflects that the last communication with Lafayette Bone & Joint Clinic regarding coverage for Practical Healthcare Supply, Inc. as a named insured was on or about May 25, 2010." (Rec. Doc. 14-1 at 2).  Mr. Harris's affidavit testimony is important.  That date was more than three years before the suit was filed, and any claim arising out of any discussions had at that time had already perempted before this lawsuit was filed. Practical Supply has offered no evidence contradicting Mr. Harris's affidavit testimony.  Instead, the plaintiff argued that the allegations of the restated complaint were broad enough to counter the effect of the affidavit or, alternatively, that

-16-

discovery is needed to determine what communications were had and when they occurred.  Neither of those arguments is persuasive.

First, if the undersigned was resolving the pending motion using an analysis similar to that employed in the context of a Fed. R. Civ. P. 12(b)(6) motion, conclusory allegations and unwarranted deductions of fact would not be accepted as true.[25]  The plaintiff's allegation that Mr. Harris was instructed "when [the plaintiff] first sought to obtain property and liability insurance, and at all times pertinent thereafter" (Rec. Doc. 1-1 at 12) is too vague, speculative, and conclusory to be accepted as true.

Second, as noted previously, the lack of specific allegations in the restated complaint concerning the date on which substantive communications concerning insurance coverage were conducted is an omission of critical details that permits the undersigned to pierce the pleadings and rely upon summary-judgment-type evidence, such as Mr. Harris's affidavit.

Third, the plaintiff has had ample time since this lawsuit was first filed in November 2014 to conduct any necessary discovery with regard to the critical issue now before the court, i.e., the specific dates on which the plaintiff instructed Mr.

---

[25]       *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Harris to obtain the type of coverage that Practical Supply now contends Mr. Harris failed to procure.

Finally, in its reply brief, Practical Supply also argued that since there were e-mails between Sherry Rue at Practical Supply and Tabitha Holt at Landry Harris in connection with the most recent renewal of the policy – even though the conversation had nothing whatsoever to do with Practical Supply – there was a new failure on the part of the insurance agent upon issuance of the renewed policy.  Arguments raised for the first time in a reply brief generally are not considered,[26] and these e-mails arguably did not constitute summary-judgment-type evidence because they were not supported by an affidavit or certified as being business records.  However, even if the e-mails were accepted as summary-judgment-type evidence and even if the reply brief and the e-mails attached to it were read as liberally as possible, there is still no basis for finding that Mr. Harris was negligent in failing to obtain coverage for Practical Supply at the time of the e-mail exchange between Ms. Rue and Ms. Holt.  The e-mails have nothing to do with coverage for Practical Supply but address only a change in the policy with regard to Dr. Sledge, Falcon Pharmacy, LLC, and UM

---

[26]     *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 492 (5th Cir. 2014); *DePree v. Saunders*, 588 F.3d 282, 290 (5th Cir. 2009); *United States v. Clinical Leasing Serv., Inc.*, 982 F.2d 900, 902 n. 4 (5th Cir. 1992); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989).

coverage. (Rec. Doc. 16-1 and 16-2). Thus, there is no connection between the topics covered in the e-mail correspondence and the lack of coverage provided by the insurance policy for Practical Supply; consequently, the e-mails when compared to the contents of the policy do not evidence negligence on the part of Mr. Harris. Moreover, if Ms. Rue was, as the plaintiff represented, the "individual responsible for overseeing the contested policy on behalf of Practical [Supply]" (Rec. Doc. 16 at 6), then it is clear that she (and therefore Practical Supply) had constructive knowledge of the contents of the policy on October 11, 2013, which is more than one year before this lawsuit was filed in November 2014.

The removing defendants, Liberty Mutual and Peerless, have satisfied the burden of establishing that the plaintiff's claim against Mr. Harris has perempted, and the plaintiff consequently has no possibility of recovering against Mr. Harris. Therefore, it is appropriate that the motion to remand be denied.

Additionally, it is equally appropriate that the plaintiff's claim against Mr. Harris be dismissed. The Fifth Circuit has stated that "summary judgment will always be appropriate in favor of a defendant against whom there is no possibility of recovery,"[27] and courts within the Fifth Circuit have summarily dismissed improperly

---

[27]     *Carriere v. Sears, Roebuck & Co*., 893 F.2d 98, 102 (5th Cir. 1990).

joined defendants on numerous occasions.[28]   The undersigned will, therefore, recommend that the plaintiff's claim against Mr. Harris be dismissed.

### CONCLUSION

The defendants removed this action from state court, contending that the amount in controversy exceeds the jurisdictional threshold, that the plaintiff is diverse in citizenship from the defendants other than Mr. Harris, and that Mr. Harris's citizenship must be disregarded because he was improperly joined as a defendant in the suit.  Accordingly, the plaintiff's motion for remand (Rec. Doc. 8) is DENIED.

Signed at Lafayette, Louisiana, this 17th day of June 2015.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[28]      See, e.g., *Rojas v. Wells Fargo Bank, N.A.*, 571 Fed. App'x 274, 278 (5th Cir. 2014) ("Because the district court properly found that HLC, Alexander, and BDFTE were improperly joined, it did not err in dismissing them. . . ."); *Michels v. Safeco Ins. Co. of Indiana*, 544 F. App'x 535, 540 (5th Cir. 2013) ("the district court correctly dismissed Womack as improperly joined. . . ."); *Butler v. Louisiana State Univ. Health Sciences Ctr.*, No. 12–cv–1838, 2012 WL 7784402 (W.D.La. Nov. 19, 2012) ("A finding of improper joinder is tantamount to dismissal of the defendant who was improperly joined."), *report and recommendation adopted sub. nom.*, 2013 WL 1180873 (W.D.La. Mar. 20, 2013); *Moss v. Unum Grp. Corp.*, No. 10–cv–0002, 2010 WL 3190399, at *3 (W.D.La. July 14, 2010) (recommending "that the court grant summary judgment sua sponte and dismiss all claims" against the improperly joined parties), *report and recommendation adopted sub. nom*. 2010 WL 3199728, at *4 (W.D.La. Aug. 11, 2010).